## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**VERNON ESTEVE**                                              **CIVIL ACTION**

**VERSUS**                                                    **NO. 15-0787**

**N. BURL CAIN, WARDEN**                              **SECTION "G" (4)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.    Factual and Procedural Background

The petitioner, Vernon Esteve, ("Esteve"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On January 25, 2010, Esteve was charged by felony bill of information with two counts: (1) creation or operation of a clandestine laboratory for

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 4.

the unlawful manufacture of methamphetamine, and (2) possession of methamphetamine.[3]  Esteve entered a plea of not guilty to the charges on March 31, 2010.[4]

The record reflects that on November 18, 2009, narcotics task force officers in Slidell, Louisiana, discovered a clandestine methamphetamine laboratory at the home of Mary Boyd.[5]

The narcotics officers had received a tip from a Wal-Mart loss prevention officer that, based on the types of purchases some customers had made at his store, he suspected they might be involved in the production of methamphetamine.  Based on the tip, two officers followed a vehicle that had been described by the loss prevention officer to a residence on Admiral Nelson Drive.  As the vehicle pulled up to the residence, two white females and a juvenile exited the car and entered the house.  Later, a white male wearing a black shirt and baseball cap exited and reentered the house.  One of the white females exited and reentered the house several times with a young child.  After a few hours of surveillance, based on the tip they had received, and their concern for the child, the officers conducted a knock and talk investigation at the residence.

The officers approached the small child who was playing outside, and asked him to get his mother from inside so they could speak to her.  The child retrieved his mother, Mary Boyd, from inside, and the officers asked her to have all of the occupants of the house step out into the front yard.  Mary Boyd complied and returned with Shawna Evans and the defendant, Vernon Esteve.

---

[3]St. Rec. Vol. 1 of 4, Felony Bill of Information, 1/25/10.  It was later amended to include two counts of cruelty to a juvenile.  However, these counts were severed from the first two and trial proceeded only on the first to counts.  The cruelty to a juvenile charges are therefore not relevant before this federal habeas court.

[4]St. Rec. Vol. 1 of 4, Minute Entry, 3/31/10.

[5]The facts were taken from the opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  *State v. Esteve*, 92 So. 3d 1058 (La. App. 1 Cir. 2012); St. Rec. Vol. 4 of 4, 1st Cir. Opinion, 2011-KA-1889, 5/3/12.

One of the officers noticed another female, Barbara Carson (also known as Barbara Esteve), walking from the garage to the rear area of the house, and ordered her to the front yard as well.

The officers conducted a security sweep of the residence, in order to secure all of the occupants and prevent any dangers that a potential clandestine laboratory might cause. During the sweep, they encountered the man they had seen with the baseball cap, Warren Anthony, inside the garage. A search of his person turned up a pack of lithium batteries and $1,196 in cash.

After securing all of the occupants outside of the house, one of the detectives advised the other that he had seen something being tossed out of the back of the house as they waited for everyone to exit. The officer went behind the house and found a wadded-up ball of coffee filters that contained a white, powder-like substance that tested presumptively positive as methamphetamine.[6] Based on this evidence, the officers procured a search warrant for the residence.

During the subsequent search, narcotics agents recovered multiple items often used in the production of methamphetamine, including a Barq's soda bottle containing a white liquid, a new-in-the-box blender, numerous pieces of aluminum foil, coffee filters, Liquid Fire brand sulfuric acid, lithium batteries, and several containers of salt. Based on this evidence, all of the adult occupants were arrested and billed with creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance (methamphetamine) and possession of a Schedule II controlled dangerous substance (methamphetamine).

On March 2, 2011, a jury found Esteve guilty as charged on both counts, following a one-day trial.[7] On March 31, 2011, the Trial Court sentenced him to fifteen years imprisonment at hard labor

---

[6]The parties stipulated at trial that the substance in the filters was methamphetamine.

[7]St. Rec. Vol. 1 of 4, Jury Verdict Forms, 3/2/11; St. Rec. Vol. 2 of 4, Trial Transcript, 3/2/11.

on count 1, and five years imprisonment at hard labor on count 2.[8]  The State filed a multiple bill, and the Trial Court found Esteve to be a third felony offender after a hearing on December 1, 2011.[9] On the same day, the Trial Court resentenced him on count 1 to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence.[10]

On direct appeal, Esteve's counsel asserted two errors: (1) the Trial Court erred by overruling Esteve's objections to the admission of pharmacy logs purportedly detailing his purchase of pseudoephedrine; and (2) the Trial Court erred by failing to advise Esteve of the time delays for filing for post-conviction relief.[11]  The Louisiana First Circuit affirmed Esteve's conviction and sentence on May 3, 2012.[12]  The First Circuit found that both of Esteve's assignments of error were without merit.

On November 2, 2012, the Louisiana Supreme Court denied without reasons Esteve's related writ application.[13]  His conviction and sentence became final ninety (90) days later, on January 31, 2013, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U .S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment

---

[8]St. Rec. Vol. 1 of 4, Sentencing Minute Entry, 3/31/11; St. Rec. Vol. 2 of 4, Sentencing Transcript, 3/31/11.

[9]St. Rec. Vol. 3 of 4, Minute Entry, 12/1/11.

[10]*Id.*

[11]St. Rec. Vol. 4 of 4, Appellate Brief, 11/7/11.

[12]*State v. Esteve*, 92 So. 3d 1058 (La. App. 1 Cir. 2012); St. Rec. Vol. 4 of 4, 1st Cir. Opinion, 2011-KA-1889, 5/3/12.

[13]*State v. Esteve*, 99 So. 3d 663 (Mem) (La. 2012); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2012-K-1214, 11/2/12..

includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

On August 21, 2013, Esteve timely filed a *pro se* application for post-conviction relief in the Trial Court.[14]  In his application he raised the following grounds for relief: (1) suppression of evidence by the prosecution in violation of *Brady v. Maryland*; (2) prosecution allowed perjured testimony to go uncorrected; (3)  insufficient evidence to support his conviction; (4) insufficient evidence to support the habitual offender adjudication; (5) ineffective assistance of trial counsel; and (5) ineffective assistance of appellate counsel.

The Trial Court denied the application, finding that both of the claims regarding the insufficient evidence were not proper grounds for post conviction relief under La. Code Crim. P. art. 930.3.[15]  The Trial Court also concluded that the rest of the claims were meritless.

On March 21, 2014, the Louisiana First Circuit denied Esteve's related writ application without stated reasons.[16]  The Louisiana Supreme Court also denied relief without stated reasons on February 13, 2015.[17]

---

[14]St. Rec. Vol. 3 of 4, Post-Conviction Relief Application, 8/21/13.

[15]St. Rec. Vol. 3 of 4, Reasons for Judgment, 9/23/13.

[16]St. Rec. Vol. 4 of 4, 1st Cir. Order, 2013-KW-1999, 3/21/14; 1st Cir. Writ Application, 2013-KW-1999, 11/13/13.

[17]St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2014-KH-0772, 2/13/15; La. S. Ct. Writ Application, 2014-KH-0772, 4/2/14.

## II.    Federal Petition

On March 20, 2015, the clerk of this Court filed Esteve's federal petition for habeas corpus relief in which he asserts the following grounds for relief:[18] (1) the State suppressed evidence in violation of *Brady v. Maryland*; (2) State allowed perjured testimony to go uncorrected; (3) insufficient evidence to support his conviction; (4) insufficient evidence to support the habitual offender adjudication; (5) ineffective assistance of trial counsel; (6) ineffective assistance of appellate counsel; and (7) the Trial Court erred in allowing prosecution to introduce hearsay evidence of the pharmacy logs in violation of his Sixth Amendment right to confrontation.

The State filed a response in opposition to Esteve's petition conceding timeliness and exhaustion.[19]  However, the State urges that two of the claims are procedurally defaulted, and that all of the claims lack merit.

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104132, 110 Stat. 1214,[20] applies to this petition, which is deemed filed in this Court no later than March 19, 2015.[21]  The threshold questions on habeas review under the amended statute are whether the

---

[18]Rec. Doc. Nos. 3, 4.

[19]Rec. Doc. No. 14.

[20]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376–78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Esteve's federal habeas petition on March 20, 2015, when the filing fee was received. Esteve's signature on the petition was dated March

petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir.1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record reflects that Esteve's federal petition was timely filed and that all of the claims are exhausted. The State asserts, however, that two of Esteve's issues are in procedural default.[22] Alternatively, the State argues that those two issues and the remaining are meritless.

## IV.    Procedural Default (Claim Nos. 3 & 4: Insufficient evidence to support the conviction; Insufficient evidence to support the habitual offender adjudication)

The State recognizes that two claims raised by Esteve are in procedural default, having been dismissed by the state courts as procedurally barred from review. These claims are (1) Esteve's allegation that there was insufficient evidence to support his conviction; and (2) his allegation that there was insufficient evidence to support the habitual offender adjudication.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent

---

19, 2015. This is the earliest date he could have delivered the petition to prison officials for mailing. The fact that he paid the filing fee at a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if filing fee was not paid at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

[22]Rec. Doc. No. 14.

and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. The Court must consider whether the bar to review relied upon by the Louisiana courts prohibits consideration of the claims on federal habeas corpus review.

### A.    <u>Independent and Adequate</u>

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar. *Amos*, 61 F.3d at 338 (citation omitted). Here, the Court clearly stated that both of these claims were not proper ground for post-conviction relief. This Court now considers the adequacy of the state courts' procedural basis for denial of relief on these two claims.

The question of the adequacy of a state procedural bar is itself a federal question. *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, 562 U.S. 307, 131 S. Ct. 1120, 1127-28 (2011); *Glover*, 128 F.3d at 902. A state procedural rule, however, "can be 'firmly established' and 'regularly followed,'–even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard*, 558 U.S. at 60-61.

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp. 2d 655, 674 (S.D. Tex. 1999). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *See Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAfee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985) and *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel Bradley v. Clark, No. 99-C-1785*, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that procedural bar. *Davis v. Johnson*, No. 00CV684–Y, 2001 WL 611164, at *4 n.10 (N.D. Tex. May 30, 2001); *see also Johnson v. Lensing*, No. 99–0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (La. Code Crim. P. art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97–1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999) (Mentz, J.) (Art.

930.8 was not adequate to bar review because it was misapplied). Thus, where such foundation and basis does exist, as it does in the case of these claims, the bar must stand.

In this case, the state district court relied upon La. Code Crim. P. art. 930.3[23] to find that Esteve had raised two claims that were not proper grounds for post-conviction relief. The federal courts have repeatedly held that the La. Code Crim. P. art. 930.3 and its progeny are both independent and adequate state law grounds for dismissal which bar review of similar claims by the federal courts in a habeas corpus proceeding. *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sep. 28, 2000) (Art. 930.3, State ex rel. Melinie) (Table, Text in Westlaw); *Evans v. Cain*, No. 11–2584, 2012 WL 2565008, at *8 (E.D. La. Mar. 14, 2012); *Taylor v. Cain*, No. 07–3929, 2008 WL 4186883, at * 16 (E.D. La. Sep. 10, 2008); *Williams v. Cain*, No. 05–0710, 2008 WL 3363562, at *8 (E.D. La. Aug. 8, 2008); *Madina v. Cain*, No. 05–2126, 2006 WL 2726506, at *3 (E.D. La. Sep. 20, 2006); *Johnson v. Andrews*, No. 05–0413, 2006 WL 2294864, at *4 (E.D. La. Aug. 4, 2006); *Williams v. Miller*, No. 05–0086, 2006 WL 2087867, at *9 (E.D. La. Jul. 24, 2006); *Dedmond v. Cain*, No. 03–3375, 2005 WL 1578086, at *8 (E.D. La. Jun. 30, 2005); *Neal v. Kaylo*, No. 01–2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001); *Leonard v. Hubert*, No. 00–0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.); *Marshall v. Hubert*, No. 00–0334, 2000 WL 1059820 (E.D. La. Jul. 31, 2000); *Ardis v. Cain*, No. 99–1862, 1999 WL 997497 (E.D. La. Oct. 29, 1999).

---

[23]Article 930.3 sets forth the proper grounds for post-conviction relief: (1) The conviction was obtained in violation of the constitution of the United States or the state of Louisiana;(2) The court exceeded its jurisdiction;(3) The conviction or sentence subjected him to double jeopardy;(4) The limitations on the institution of prosecution had expired;(5) The statute creating the offense for which he was convicted and sentenced is unconstitutional; or(6) The conviction or sentence constitute the ex post facto application of law in violation of the constitution of the United States or the state of Louisiana.(7) The results of DNA testing performed pursuant to an application granted under Article 926.1 proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted. La. Code Crim. Proc. art. 930.3.

The Court reiterates that it is not within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03–2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing La. Code Crim. P. art. 930.3 as applied to ineffective assistance of counsel claim). The Louisiana courts' decision to bar such claims is within their authority and prerogative. Therefore, the Court finds that the state procedural bar imposed in Esteve's case is adequate to bar review of the merits of Esteve's claims regarding insufficient evidence.

Esteve will be excepted from the procedural bar to federal review of his claims only if he can show cause for his defaults and prejudice attributed thereto. Alternatively, he could demonstrate that the federal court's failure to review the claims will result in a fundamental miscarriage of justice. *Nobles*, 127 F.3d at 414 (citing *Coleman*, 501 U.S. at 731–32); Amos, 61 F.3d at 338–39 (citing *Harris*, 489 U.S. at 262 and *Engle v. Isaac*, 456 U.S. 107, 129 (1982)). These exceptions to the imposition of a bar will be addressed below.

### B.    Cause and Prejudice

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731–32); *Amos*, 61 F.3d at 338–39 (citing *Harris*, 489 U.S. at 262; *see Engle v. Isaac*, 456 U.S. 107, 128 & n.33 (1982))

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize

the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

In this case, Esteve has also alleged ineffective assistance of appellate counsel. It appears that Esteve alleges that his attorney's ineffectiveness was the failure to raise claims properly on appeal, rather than on post-conviction. However, this Court's review of the record does not support a finding of ineffective assistance of appellate counsel. That finding is discussed in a merits review of his remaining claims, *infra*. For purposes of this section, however, it suffices to say that a meritless ineffective assistance of counsel claim does not constitute cause for procedural default.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681–82 (5th Cir. 1977)).

Esteve's defaulted arguments are therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[24]

---

[24]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument *sua sponte*. Id.

### C.   __Fundamental Miscarriage of Justice__

Esteve may avoid these procedural bars only if a fundamental miscarriage of justice will occur if the merits of these claims are not reviewed.  *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  "To satisfy the factual innocence standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt."  *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *see Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  *Glover*, 128 F.3d at 903.

Despite proclaiming his own innocence, Esteve has not produced any evidentiary support of actual innocence on the underlying conviction, or the multiple offender adjudication.  In other words, he presents no evidence or argument of the kind of actual innocence that would excuse his procedural default.  Esteve has thus failed to overcome the procedural bar to his claims.  The two claims of insufficient evidence will therefore not be addressed herein, as they are procedurally barred and can be dismissed with prejudice for that reason.

**V.**     **Standards of Review on the Merits of the Remaining Claims**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, —— U.S. ——, 134 S.Ct. 1697, 1706–07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787 (2011) and *Knowles v.. Mirzayance*, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the

time of the state-court decision. '" *White*, 134 S.Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405–06, 412–13; *Penry v. Johnson*, 532 U.S. 782, 792–93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S.Ct. at 1706–07; *Williams*, 529 U.S. at 406–08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* " '[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24–25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, —— U.S. ——, 131 S. Ct. 1388, 1398 (2011).

**VI.    Claim No. 1: Suppression of the evidence in violation of *Brady***

In his first claim, Esteve asserts that the State failed to comply with the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, when it failed to disclose to the defense "information obtained from the on-going investigation of Mary Boyd." Specifically, Esteve asserts that an interview with Boyd's son, conducted by an employee of the Children's Advocacy Center, and summarized in the supplemental police narrative, was favorable material that the State unconstitutionally suppressed.

According to Esteve, the interview contained a "significant" fact–namely, that the child only mentioned his mother, Mary Boyd, in describing the production of methamphetamine, and failed to mention that anyone helped her make what he called "the white stuff." Therefore, the interview was information favorable to the defense that ought to have been provided by the State.

Esteve raised this claim in post-conviction review before the state courts, and it was denied as meritless. In the last reasoned state court decision, the Trial Court found simply that the "fact of the statement and the content of that statement was contained within the police narrative and was part of the open file discovery provided to the defense." Thus, the Trial Court found the claim lacked merit, as the evidence was available to the defense.

Esteve has not made any showing to rebut the state courts' findings that the police narrative was available to the defense in open discovery. However, out of an abundance of caution, this Court

notes that even assuming *arguendo* that his allegation that it was not available to the defense is true, his claim still must fail.

With respect to claims that the prosecution withheld evidence in violation of *Brady* and its progeny, the United States Supreme Court has held:

> A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused. This Court has held that the *Brady* duty extends to impeachment evidence as well as exculpatory evidence, and *Brady* suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor.

*Youngblood v. West Virginia*, 547 U.S. 867, 869–70 (2006) (internal citations and quotation marks omitted). Therefore, to prevail on a *Brady* claim, a petitioner "must show that (1) the state withheld evidence, (2) the evidence was favorable to the accused, and (3) the evidence is material to guilt or punishment." *DiLosa v. Cain*, 279 F.3d 259, 262–63 (5th Cir. 2002).

Here, it is clear that even if the police report was not disclosed, Esteve has failed to meet the "materiality" prong.  A *Brady* violation occurs only when the withheld evidence was "material" in the constitutional sense.  On that point, the United States Supreme Court has held:

> Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different, although a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. The reversal of a conviction is required upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

*Youngblood*, 547 U.S. at 870 (internal citations and quotation marks omitted).  Here, the fact that Boyd's son did not mention that his mother helped manufacture methamphetamine would not likely have made a difference in the outcome of Esteve's trial.  The child's interview only served to inculpate his mother–who had already pled guilty–not to exculpate Esteve.

In fact, based on the nature of methamphetamine production–testified to at length by a narcotics officer at trial–it is often necessary for many individuals to be involved in acquiring all of the materials in order to avoid detection by law enforcement.  Furthermore, the testimony of the officer also established that due to the dangerous nature of producing methamphetamine, it is helpful to have more than one person assisting in the cooking process.

Thus, unlike a crime in which one's guilt might exonerate another, the established guilt of Mary Boyd did no such thing.  Indeed, it likely suggested to the jury that the other occupants of her residence might be there to help.  Esteve has not shown that the information from Boyd son's interview was material under *Brady*. Therefore, he is not entitled to federal habeas corpus relief on this claim.

**VII.    Claim No. 2:  State allowed perjured testimony to go uncorrected**

In his second claim, Esteve alleges that the State allowed its star witness, Mary Boyd, to give false, perjured testimony at trial.  The claim hinges on two statements made by Mary Boyd that contradicted the police report and the statement of her son.  At trial, Boyd testified that she had not gone to Wal-Mart the day they all were arrested, and she testified that she did not throw any evidence out the window.  Esteve argues that these statements were false and the prosecution knew they were false because (1) an officer testified, and the police report confirmed, that the officers had followed her from Wal-Mart, and (2) her son stated in the interview that he saw her throw something out of the window.  The Trial Court denied this claim in the last reasoned state court decision on the issue, finding that Mary Boyd was available for cross-examination on these alleged falsehoods, and that it was the jury's duty to weigh the credibility of the witnesses.

A claim of prosecutorial misconduct, including use of perjured testimony, presents a mixed question of law and fact. *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing *United States v. Emueqbunam*, 268 F.3d 377, 403–04 (6th Cir. 2001); *Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000); *United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997); *United States v. Spillone*, 879 F.2d 514, 520 (9th Cir . 1989)). This Court must therefore determine whether the state courts' rulings were contrary to or an unreasonable application of federal law.

A state denies a defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *Giglio v. United States*, 405 U.S. 150, 766 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). In order to obtain relief, the defendant must show that: (1) the testimony was actually false, (2) the State knew the testimony was false, and (3) the testimony was material. *Duncan v. Cockrell*, 2003 WL 21545926, at*3 (5th Cir. July 3, 2003); *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993). False testimony is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict. *Duncan*, 2003 WL 21545926, at *3 (citing *Nobles*, 127 F.3d at 415).

Here, it is clear Esteve has not met his burden of proving these elements. First, it is not clear that Boyd's testimony is "false"–as the State points out in its response, at the time of her arrest Boyd was addicted to methamphetamine and she testified that she did not read the police report. It is quite possible that she did not recall whether or not she went to Wal-Mart, or threw the evidence out of the window. Such discrepancies in testimony often arise at trial and are matters for the jury to resolve in weighing credibility. However, even if these statements could be considered "false" and

the State arguably knew they were "false" because they had access to the police report, these statements were in no way material.

Whether Mary Boyd did or did not go to Wal-Mart on the day of the arrest, and whether she was the individual that threw the evidence out of the window, has little relevance to Esteve's guilt or innocence in operating the clandestine methamphetamine laboratory. Assuming that instead Boyd had testified that she had gone to Wal-Mart, and had thrown the evidence out of the window, none of the facts relevant to Esteve's alleged involvement would have changed. Indeed, Boyd had already pled guilty as charged and thus her own guilt was not at issue.

Furthermore, the allegedly false testimony was elicited during cross-examination by the defense. It was a part of the defense's trial strategy to undermine Boyd's credibility by eliciting testimony which contradicted the officers' testimony, and thereby painting her as a liar. Thus, the impeachment value of her contradictory statements was exploited by the defense, and thereby made the jury aware of the alleged falsity of her testimony.

Under these circumstances, Esteve has failed to show that his due process rights were violated by prosecutorial misconduct. He is not entitled to federal habeas corpus relief on this claim.

## VIII.  Claims No. 5 & 6: Ineffective Assistance of Counsel

In his next two claims, Esteve asserts that he received ineffective assistance of both trial and appellate counsel. These claims are addressed together herein, as the same federal standard applies. Specifically, Esteve contends that he received ineffective assistance of trial counsel when trial counsel (1) failed to investigate and obtain medical documents, which would prove he had nose surgery and would explain the reason he had pseudoephedrine in his possession; (2) failure to subpoena the officer who allegedly saw the evidence thrown out the window by Mary Boyd; (3)

20

failure to subpoena Mary Boyd's son who was interviewed by detectives; and (4) abandoning him after the habitual offender adjudication and failing to protect his appeal right. Esteve asserts he received ineffective assistance of appellate counsel for (1) failure to raise a claim of insufficient evidence; (2) failure to raise a claim of ineffective assistance of counsel; and (3) failure to challenge the habitual offender adjudication.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). Thus, the question before this Court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 688 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. *Id.*, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.*, 466 U.S. at 687–88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this Court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' ...

But it is not enough under *Strickland*, 'that the errors had some conceivable effect on the outcome

of the proceeding.'" (citation omitted) *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting

*Strickland*, 466 U.S. at 693); *Harrington*, 131 S.Ct. at 792 (*Strickland* requires a "substantial"

likelihood of a different result, not just a "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under *Strickland*,

"[t]he question is whether an attorney's representation amounted to incompetence under prevailing

professional norms, not whether it deviated from best practices or most common custom."

*Harrington*, 131 S.Ct. at 788. The *Harrington* Court went on to recognize the high level of deference

owed to a state court's findings under *Strickland* in light of the AEDPA:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and
> when the two apply in tandem, review is doubly so. The *Strickland* standard is a
> general one, so the range of reasonable applications is substantial. Federal habeas
> courts must guard against the danger of equating unreasonableness under *Strickland*
> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not
> whether counsel's actions were reasonable. The question is whether there is any
> reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 131 S.Ct. at 788. Thus, scrutiny of counsel's performance under Section 2254(d)

is "doubly deferential." *Cullen v. Pinholster*, ⸺ U.S. ⸺, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557

(2011) (quoting *Knowles*, 556 U.S. at 123). This court must therefore apply the "strong presumption"

that counsel's strategy and defense tactics fall "within the wide range of reasonable professional

assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly

proven otherwise by the petitioner. *Id.*, 466 U.S. at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir.

2008); *Moore*, 194 F.3d at 591.  In assessing counsel's performance, a federal habeas court must

make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances

of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Id.*, 466 U.S. at 689; *Neal*, 286 F.3d at 236–37; *Clark v. Johnson*, 227 F.3d 273, 282–83 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167, 121 S.Ct. 1129, 148 L.Ed.2d 995 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999), *cert. denied*, 528 U.S. 1013, 120 S.Ct. 522, 145 L.Ed.2d 401 (1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir. 1994)).

The Court will now consider each of the issues raised by Esteve regarding ineffective assistance of counsel under the *Strickland* framework.

### A.   <u>Trial Counsel</u>

Esteve's first contention regarding his trial counsel is that counsel failed to investigate and obtain medical documents which would prove that he had nose surgery which in turn would have explained to the jury his reason for purchasing pseudoephedrine on various occasions.  These purchases were important to the State in establishing his guilt, because pseudoephedrine is a necessary ingredient in manufacturing methamphetamine.

This aspect of his claim must fail.  The alleged medical records were not a part of the state court record, and therefore there is no way to know if they exist, or what they contain.  Thus Esteve simply cannot demonstrate to this Court that the Trial Court unreasonably denied him relief on this claim.

Next, Esteve contends that the failure to subpoena Detective Brown and Boyd's son, who allegedly saw Mary Boyd throw the evidence of the methamphetamine out of the window, was ineffective.  The Trial Court rejected this claim on post-conviction relief, stating simply that Esteve

"failed to demonstrate how the testimony of these witnesses would have [a]ffected the outcome of the trial."  As the United States Court of Appeals for the Fifth Circuit has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. See *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by "nam[ing] the witness, demonstrat[ing] that the witness was available to testify and would have done so, set[ting] out the content of the witness's proposed testimony, and show[ing] that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010).  Here, Esteve named the witnesses, but presented no affidavits as to their proposed testimony to the Trial Court.  Rather, he merely assumes that their testimony would prove that "only Mary Boyd" was in possession of the methamphetamine. He has not met his burden on this claim.

Finally, Esteve claims that his trial counsel "abandoned" him after filing his direct appeal, because trial counsel did not appeal his habitual offender adjudication.  This claim must also fail. Esteve has failed to demonstrate that preserving his right to appeal his habitual offender adjudication would have created a reasonable probability of success on the merits of such a claim.  Thus, he merely speculates regarding his trial counsel's ineffectiveness and has not met his burden on this claim.

### B.   __Appellate Counsel__

Esteve alleges that his appellate counsel failed to raise two claims on appeal, and also failed to challenge his habitual offender adjudication, rending appellate counsel's assistance constitutionally deficient.  These claims are cognizable on *habeas* review, as persons convicted of a crime are entitled to effective assistance of counsel in their first appeal of right.  *Evitts v. Lucey*,

469 U.S. 387, 394 (1985).  The *Strickland* standard laid out earlier also applies to claims regarding appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's ineffective performance.  *Briseno v. Cockrell*, 274 F. 3d 204, 207 (5th Cir. 2001).

However, effective appellate counsel is not required to assert every nonfrivolous ground for appeal.  *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Evitts*, 469 U.S. at 394).  In fact, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue every nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal.  *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). Furthermore, counsel may exclude a nonfrivolous claim if it was unlikely to prevail on appeal.  *See Anderson v. Quarterman*, 204 F. App'x 402, 410 (5th Cir. 2006) (failure to raise meritless claims did not prejudice petitioner); *Penson v. Ohio*, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless).  Therefore, because appellate counsel's essential duty is to focus on arguments that are most likely to succeed on appeal, counsel will not be found constitutionally ineffective for failure to raise every conceivable issue.  *Smith*, 538 U.S. at 288; *Jones*, 463 U.S. at 754.

Here, Esteve contends that his counsel should have raised claims of insufficient evidence, ineffective assistance of trial counsel, and should have challenged the habitual offender adjudication. As the Trial Court noted in its rejection of these claims, "[o]nce again, petitioner makes only

conclusory allegations without any further support." The Court agrees. He has not made a showing of, nor does this Court's review of the record reflect, any basis for the proposed claims to succeed on appeal. Thus, it was not ineffective for his appellate counsel not to raise them. Esteve is not entitled to federal habeas corpus relief on this claim.[25]

## IX.    Claim No. 7: Trial Court erred by denying Petitioner his Sixth Amendment right to confrontation

In his final claim, Esteve asserts that the Trial Court violated his Sixth Amendment right to confront his accuser by introducing hearsay evidence in the form of transaction logs from two different CVS pharmacies to show that he purchased quantities of pseudoephedrine from these stores. The State called two pharmacists to testify regarding how the records were maintained. Esteve's counsel challenged the admission of the logs and the testimony on direct appeal.

The Louisiana First Circuit Court of Appeal found that the Trial Court had correctly overruled Esteve's objections and allowed the pharmacy logs to be admitted under the business records exception to the hearsay rule, as set forth in La. Code Evid. art. 803(6).[26] The Court also

---

[25]Esteve also includes a section titled "Newly Discovered Evidence" under his ineffective assistance of appellate counsel claim. He attaches an affidavit from Barbara Esteve, which he argues is "newly discovered evidence"and which he included on his post-conviction relief application. It is not clear whether this claim is connected to his ineffective assistance of counsel claim, but it also must fail. The Trial Court found that this affidavit does not constitute "newly discovered evidence" and rejected any claim associated with it. This Court agrees, and the affidavit does not create any grounds for federal habeas corpus relief.

[26](6) **Records of regularly conducted business activity.** A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule. The term "business" as used in this Paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Public records and reports which are specifically excluded from the public records exception by Article 803(8)(b) shall not qualify as an exception to the hearsay rule under this Paragraph. La. Code Evid. art. 803

found that the records were not created for the primary purpose of proving or establishing some fact at trial under *Melendez-Diaz v. Massachusett*, and thus were non-testimonial under *Crawford v. Washington*. Therefore, the preparers of the pharmacy logs were not subject to confrontation under the Sixth Amendment.

This decision was not an unreasonable application of Supreme Court precedent. The United States Court of Appeals for the Fifth Circuit recently held that the admission of pseudoephedrine purchase logs did not violate a defendant's confrontation logs, because they were considered business records and qualify as an exception to hearsay. *United States v. Towns*, 718 F.3d 404 (5th Cir.) *cert. denied*, 134 S. Ct. 307, 187 L. Ed. 2d 155 (2013). The Court, in rejecting the defendant's reasoning, stated:

> This line of argument is defeated by the Supreme Court's clear direction in Melendez–Diaz. The Court acknowledged that business records are "generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez–Diaz*, 557 U.S. at 324, 129 S.Ct. at 2539–40. The statements of a lab analyst—held to be affidavits within the core class of testimonial statements—could not be used in *Melendez–Diaz* absent confrontation because they were "prepared specifically for use at ... trial." *Id.*, 129 S.Ct. at 2540. In contrast, the business records in this case were not prepared solely with an eye toward trial. *Cf. Bullcoming v. New Mexico*, —— U.S. ——, 131 S.Ct. 2705, 2717, 180 L.Ed.2d 610 (2011) (applying *Melendez–Diaz* and noting that a document created solely for an evidentiary purpose is likely testimonial). The pharmacies created these purchase logs *ex ante* to comply with state regulatory measures, not in response to an active prosecution. Additionally, requiring a driver's license for purchases of pseudoephedrine deters crime. The state thus has a clear interest in businesses creating these logs that extends beyond their evidentiary value. Because the purchase logs were not prepared specifically and solely for use at trial, they are not testimonial and do not violate the Confrontation Clause.

*Id.* at 410-11.  Esteve has not pointed to any Supreme Court precedent which entitles him to relief on this claim.  The state courts' denial of this claim was neither contrary to, nor an unreasonable application, of federal law.  Esteve is not entitled to federal habeas corpus relief on this claim.

## X.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Esteve's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[27]

New Orleans, Louisiana, this 25th day of August, 2015.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[27] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.